# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| CHRISALYN MARTIN-QUIGLEY o/b/o A.Q., a minor,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | 2:17-cv-01464-RFB-VCF<br><br>**REPORT AND RECOMMENDATION**<br><br>MOTION FOR REVERSAL AND REMAND [ECF NO. 15], CROSS-MOTION TO AFFIRM [ECF NO. 17] |

This matter involves an appeal by Plaintiff A.Q., a minor child by his guardian ad litem Chrisalyn Martin-Quigley, from the Commissioner's final decision denying A.Q. social security benefits. Before the Court is A.Q.'s Motion for Reversal and Remand (ECF No. 15) and the Commissioner's Cross-Motion to Affirm (ECF No. 17). For the reasons stated below, the Court should grant A.Q.'s motion to reverse in part and deny the Commissioner's motion to affirm.

## STANDARD OF REVIEW

The Fifth Amendment prohibits the government from depriving persons of property without due process of law. U.S. CONST. amend. V. Social security claimants have a constitutionally protected property interest in social security benefits. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). Where, as here, the Commissioner of Social Security renders a final decision denying a claimant's benefits, the Social Security Act authorizes the District Court to review the Commissioner's decision. *See* 42 U.S.C. § 405(g).

The District Court's review is limited. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The Court "may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Schneider v. Comm'r*

*of Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000).  "[H]armless error applies in the Social Security context" "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054-55 (9th Cir. 2006). Substantial evidence means such relevant "evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014).

## DISCUSSION

A.Q. was less than four years old when his first application for benefits was filed, and it now over ten years old. (ECF No. 14-1 at 24). Minor children may be eligible for Supplemental Security Income ("SSI") benefits if they meet the definition of "disabled." 20 C.F.R. § 416.202(a)(3); 20 C.F.R. § 416.906. This determination follows the three-step sequential evaluation process in 20 C.F.R. § 416.924(a). An ALJ must determine whether the claimant (1) engages in substantial gainful activity; (2) has an impairment or combination of impairments that is severe; and (3) meets, medically equals, or functionally equals a listed impairment. (*Id.*). The ALJ considers the claimant's functioning in six domains: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To functionally equal a listed impairment, the claimant's impairments "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a).

In this case, the ALJ concluded A.Q. did not engage in substantial gainful activity during the relevant timeframe. (ECF No. 14-1 at 24). The ALJ found Brooks suffered from medically determinable severe impairments consisting of autism spectrum disorder, attention deficit hyperactivity disorder, and a phonological disorder. (*Id.*). The ALJ concluded A.Q.'s impairments do not meet, medically equal, or

functionally equal any listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 24-40). The ALJ determined that A.Q. had no or less than marked limitations in all six domains. (*Id.* at 35-40). The ALJ found that A.Q. was not under a disability as defined in the Social Security Act. (*Id.* at 40).

A.Q. challenges the ALJ's findings. A.Q. argues he "has marked to extreme limitations in three domains: (1) Attending and Completing Tasks, (2) Interacting and Relating with Others, and (3) Caring for Yourself." (ECF No. 15 at 17-27). A.Q. asserts the ALJ's findings are based on incorrect interpretation and weighing of medical testimony, the opinion of an occupational therapist, and the testimony of A.Q.'s parents. (*Id.* at 8-17). The Commissioner argues the ALJ properly assessed the evidence in concluding A.Q. is not disabled. (ECF No. 17 at 3-14).

I.  **Medical Evidence**

   A. **Dr. Weber**

Dr. Weber was A.Q.'s treating physician from late 2011 to early 2015. (ECF No. 15 at 3). Dr. Weber wrote a letter in 2013 noting that A.Q. had become "calmer" and "sustains a little longer attention" in recent visits. (ECF No. 14-2 at 923). Dr. Weber stated, "It's encouraging to see his symptoms slightly improve so he can learn to accomplish task[s], skills and show interest in academic work." (*Id.*). However, the letter also notes A.Q. is "easily distracted to simple task[s] and commands," and states, "He still requires constant supervision during the day as his behaviors can be controlled [sic] and erratic at times. He lacks self control the majority of the time. We still limitations [sic] with him in regarding to social skills and peer interactions." (*Id.*).

The ALJ cited Dr. Weber's 2013 letter several times, but only the portions discussion A.Q.'s improvements. The ALJ stated Dr. Weber noted that A.Q. "was calmer" "with a longer attention span" (ECF No. 14-1 at 31) and "it was encouraging to see [A.Q.'s] symptoms slightly improve" (*Id.* at 33). The ALJ did not mention or discuss Dr. Weber's opinion that, despite these improvements, A.Q. "still

requires constant supervision" and has limitations regarding self-control, "social skills and peer interactions."[1] (ECF No. 14-2 at 923). The ALJ also failed to state what degree of weight he gave to Dr. Weber's opinion.

The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1037 (9th Cir. 1995). "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

The ALJ erred by ignoring key components of Dr. Weber's opinion. The ALJ cited the portions of the opinion supporting the ALJ's ultimate conclusion without discussing why other portions were being implicitly rejected. Because of this, it is unclear what weight the ALJ gave to Dr. Weber's opinion. The ALJ's error was not harmless. Dr. Weber's opinion that A.Q. is "easily distracted to simple task[s] and commands," "still requires constant supervision," and has limitations regarding self-control, "social skills and peer interactions" (ECF No. 14-2 at 923) clearly supports A.Q.'s position in this case. Dr. Weber's findings indicate that A.Q. has marked or extreme limitations in attending and completing tasks and interacting and relating with others.

Because the ALJ improperly evaluated Dr. Weber's opinion, the Court should remand the ALJ's decision.

---

[1] To the extent that Dr. Weber's letter was ambiguous regarding A.Q.'s limitations with social skills and peer interactions, "the ALJ is responsible for…resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

4

### B. Dr. Minuskin

Dr. Minuskin became A.Q.'s treating physician in 2015. (ECF No. 15 at 3). Dr. Minuskin wrote a letter in 2015 stating A.Q.'s "Autism, Oppositional Defiant Disorder and Aggression" meant A.Q. "needs constant monitoring and vigilance during the day.  His mother has been the primary caretaker for these needs and should be around him most of the time, unless she is able to find a suitable surrogate to keep [him] out of harms way." (*Id.* at 941).  In evaluating Dr. Minuskin's letter, the ALJ found, "Such extreme limitations and restrictions on the claimant's daily activities are not supported by the medical evidence.  Therefore, this vague opinion is given little weight." (ECF No. 14-1 at 32).

The ALJ erred in this conclusory review of Dr. Minuskin's opinion.  The ALJ fails to give any detail into how the medical evidence contradicts Dr. Minuskin's findings.  As one example, the ALJ failed to discuss the Dr. Weber letter that also concluded A.Q. "requires constant supervision." (ECF No. 14-2 at 923).  This is medical evidence that supports Dr. Minuskin's opinion regarding A.Q.'s extreme limitations and restrictions on daily activities.  The ALJ's error was not harmless.  Dr. Minuskin's finding that ALJ needs to be supervised "to keep [him] out of harms way" (*Id.* at 941) indicate that A.Q. has marked or extreme limitations in caring for himself.

Because the ALJ improperly evaluated Dr. Minuskin's opinion, the Court should remand the ALJ's decision.

### C. Other Medical Evidence

A.Q. also challenges the ALJ's interpretation of the opinions of Dr. Cavenagh, Dr. Malatesta, and Disability Determination Services ("DDS").  (ECF No. 15 at 11-14).  A.Q.'s main challenge is that the ALJ failed to defer to A.Q.'s treating physicians and instead favored this other medical evidence. (ECF No. 15 at 14).  As previously discussed, the ALJ erred in its evaluation of Dr. Weber and Dr. Minuskin's opinions, which in turn impacts the ALJ's interpretation of other medical evidence.  However, the ALJ's

interpretation of the other medical evidence should not serve as an independent basis to remand the ALJ's decision.

II.     **Occupational Therapist's Opinion**

Dr. Hall wrote a letter on August 10, 2011, after serving as A.Q.'s occupational therapist for approximately a year. (ECF No. 14-2 at 806). The letter notes A.Q.'s violent tantrums and states A.Q. "will struggle with his condition throughout his entire life. [He] is unable to safely leave the house with [sic] considerable and taxing effort on the part of his mother. [He] demonstrates unsafe behaviors including running into the street." (*Id.*). "[He] demonstrates severe functional limitations in that he is unable to participate in daily activities without considerable planning and effort on the part of his mother and or/father in regards to [his] safety." (*Id.*).

In evaluating Dr. Hall's opinion, the ALJ said, "It is unclear how temper tantrums, and unsafe behaviors as a four year old translate to a life-long struggle requiring disability benefits. Furthermore, the record reveals that he was first evaluated by Occupational Therapist Hall on December 22, 2011, more than four months after writing the aforementioned letter." (ECF 14-1 at 29). "For those reasons, [the ALJ]…only gave the Occupational Therapist little weight." (*Id.*).

The record is clear that the ALJ was incorrect regarding when Dr. Hall first evaluated A.Q. Dr. Hall first examined A.Q. in 2010, almost a year before writing the letter. (ECF No. 14-2 at 559-563). This seriously undermines the ALJ's reasoning behind giving little weight to Dr. Hall's opinion. In addition, the ALJ seems to suggest that A.Q.'s behavior is something that a typical four-year-old will grow out of, without citing any evidence in support of this assertion. The ALJ failed to give adequate reasons for giving Dr. Hall's opinion little weight.

Because the ALJ improperly evaluated Dr. Minuskin's opinion, the Court should remand the ALJ's decision.

### III. Parents' Testimony

At the July 30, 2015 hearing, the parents testified extensively about A.Q.'s uncontrolled, aggressive, and self-harming behaviors. (ECF No. 14-1 at 106-149). The ALJ found their accounts "were not consistent with his behavior at school, his behavior during multiple examinations by many different doctors, and even his behavior during the hearing." (*Id.* at 33). The ALJ's decision also states in bold letters that Dr. Cavenagh noted A.Q. "had learned to manipulate his caregivers in his life in order to avoid activities that he does not wish to engage in and to gain access to preferred items and/or activities." (*Id.* at 29).

"[F]amily members in a position to observe a claimant's symptoms and daily activities are competent to testify as to his condition." *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ must take this testimony "into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

In this case, the ALJ gave adequate reasons to reject the testimony of A.Q.'s parents. The ALJ contrasted their testimony with school and medical accounts of A.Q.'s behavior and the ALJ's own observations of A.Q. during the hearing. The ALJ also noted there was evidence in the record that A.Q. deliberately behaved poorly around his parents to manipulate them. The ALJ's interpretation of A.Q.'s parents' testimony should not be a basis for remanding the ALJ's decision.

### IV. Remanding the ALJ's Decision

Because the ALJ's decision should be remanded, the Court must consider whether the decision should be remanded for further findings or for an award of benefits. Under the *Varney* rule, the Court must follow three steps in deciding whether to order an award of benefits on remand: (1) "ask whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence;" (2) "determine whether the

7

record has been fully developed, whether there are outstanding issues that must be resolved…and whether further administrative proceedings would be useful; and (3) "find[] the relevant testimony credible as a matter of law…then determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of [the] proceeding." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). Even if all three steps indicate that an ALJ's ruling may be remanded for an award of benefits, the decision remains in the Court's discretion. *Id.* at 1101-1102.

The Court is conscious of the fact that this matter has gone on for almost seven years. (ECF No 14-1 at 24). The case was previously remanded to the ALJ by the Appeals Council in 2015 based on a misstatement of the evidence by the ALJ. (*Id.* at 183-184). Remanding for additional findings would further delay this matter and postpone any benefits A.Q. may be entitled to.

Nevertheless, the Court should remand the ALJ's decision for further findings rather than an award of benefits. As previously discussed, the ALJ did not explicitly reject Dr. Weber's opinion. The ALJ failed to discuss portions of Dr. Weber's opinion. Giving the ALJ the chance to evaluate these portions would also affect the ALJ's interpretation of Dr. Minuskin's opinion, as the doctors reached similar conclusions. The ALJ made a mistake regarding the timing of Dr. Hall's opinion that the ALJ should have the opportunity to correct.[2]

Further proceedings would be helpful in this case, and will create an opportunity for an updated record. As the ALJ noted, the school records indicate far more mild limitations on A.Q.'s ability to function, and there has been evidence that A.Q is improving with treatment. (ECF No. 14-1 at 27-34). The ALJ may need to obtain additional evidence regarding A.Q.'s current limitations. However, the ALJ

---

[2] The ALJ made the same mistake in his original decision that was previously remanded, but it went unnoticed at the time. (ECF No. 14-1 at 166).

8

must take note that he is evaluating A.Q.'s ability to function throughout the time period since March 22, 2011, the date A.Q. filed his application for benefits. Any new evidence must be put into the context of the sever-year timeline of this case. A.Q.'s current ability to function cannot be the sole factor in evaluating A.Q.'s limitations throughout his childhood. 20 C.F.R. § 416.920b, § 416.927.

ACCORDINGLY,

IT IS RECOMMENDED that A.Q.'s Motion for Reversal and Remand (ECF No. 15) be GRANTED IN PART. The matter should be remanded for the ALJ to properly evaluate the opinions of Dr. Weber, Dr. Minuskin, and Dr. Hall and to obtain new relevant evidence to determine whether A.Q. has been disabled since March 22, 2011.

IT IS FURTHER RECOMMENDED that the Commissioner's Cross-Motion to Affirm (ECF No. 17) be DENIED.

DATED this 1st day of February, 2018.

_____

CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE